[No. 1385-3.    Division Three.    May 17, 1976.]

LARRY R. BAYMAN, *Appellant*, v. CLEARWATER POWER COMPANY, INC., ET AL, *Respondents*, LEROY E. CARLSTROM, ET AL, *Appellants.*

*S. Dean Arnold* and *Lloyd L. Pike,* for appellants.

*Curtis L. Shoemaker* (of *Paine, Lowe, Coffin, Herman & O'Kelly*) and *Wallis W. Friel* (of *Irwin, Friel & Myklebust, P.S.*), for respondents.

McInturff, C.J.—This appeal is from an order granting summary judgment in favor of defendants, Tippett and Clearwater Power Co. (hereafter Clearwater). We affirm the summary judgment in favor of Clearwater, but reverse the summary judgment in favor of the Tippetts, remanding the case to Superior Court for trial.

Plaintiff, Larry Bayman, was a contractor employed by the Tippetts to do certain repair work on the Tippett ranch buildings which were located in a rugged canyon area. To save time in supervision of his workmen, Mr. Bayman received permission from Mr. Tippett to be flown to the job site in a private aircraft. In conversation with Mr. Tippett, Mr. Bayman was advised of two landing sites on the Tippett ranch near the job. There is disagreement as to whether Mr. Bayman and Mr. Tippett discussed a third landing site located perhaps 1 to 1½ miles from the ranch, where the crash from which this action arises ultimately occurred. Concerning the third landing site, Tippett claims to have warned Mr. Bayman of updrafts and downdrafts in this bottom area near the river. Mr. Bayman denies such warnings, or does not recall such warnings.

Though it is disputed as to which fields were discussed as potential landing sites, it is clear that Mr. Tippett was not a pilot, that he advised Mr. Bayman only of where prior landings had occurred on the ranch, passed on advice from other pilots concerning drafts in the bottom area, but left the final choice of a landing site to the pilot's discretion. No specific field was designated for a landing on the day of the crash.

It is also clear that no party had knowledge of prior landings on the field which became the crash site, nor was there notice to Clearwater that a landing would be attempted on that field.

On their final approach in the early morning of a clear summer day, when there were no updrafts or downdrafts,

the aircraft struck a cable hung 35 to 40 feet above the field to support a Clearwater power pole. The aircraft was piloted by Mr. Carlstrom, with Mr. Bayman a passenger. The aircraft crashed, injuring both occupants. The cable had been installed by Clearwater from the pole to the opposite· bluff, rather than to the nearby ground, at the request of Mr. Tippett to facilitate farming of the field. Natural weathering and background made the cable very hard to see from the air. The other landing sites had been determined unsuitable by Mr. Carlstrom when an aerial inspection disclosed sprinklers on one field, and a runway too short and steep on the other.

Prior to trial, defendants' motions for summary judgment were granted. Mr. Bayman and Mr. Carlstrom both made timely appeal in a single pleading, pursuant to CAROA 33(1). We must determine whether a genuine issue of material fact exists as to the negligence of the Tippetts and/or Clearwater.[1] If none exists, it then becomes necessary to determine whether any party is entitled to judgment as a matter of law.[2]

In the case of Clearwater, there is no issue as to material fact. Clearwater had no knowledge of prior landings, or attempted landings, on the field which became the crash site, nor did Clearwater have notice that Mr. Bayman and Mr. Carlstrom would attempt a landing on this day. The field was located in a rugged canyon area away from common flight paths, 6 miles from the nearest established landing field. The field was in a bottom area often unsuitable for aviation due to updrafts and downdrafts.

█ Clearwater had a duty to warn against any foreseeable risk of harm created by the cable.[3] The existence of this duty is a question of law.[4] The failure to warn against

---

[1]CR 56(c); *Balise v. Underwood*, 62 Wn.2d 195, 199-200, 381 P.2d 966 (1963); *Wood v. Seattle*, 57 Wn.2d 469, 473, 358 P.2d 140 (1960).

[2]*LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975).

[3]*Mills v. Orcas Power & Light Co.*, 56 Wn.2d 807, 819, 355 P.2d 781 (1960).

[4]*Maltman v. Sauer*, 84 Wn.2d 975, 980, 530 P.2d 254 (1975); *Mills v. Orcas Power & Light Co.*, 56 Wn.2d 807, 819, 355 P.2d 781 (1960).

a foreseeable risk of harm, or breach of duty, is a question of fact, except where only one conclusion can be reasonably drawn from the uncontested facts in evidence. The existence of negligence then becomes a question of law.[5]

Because of the total lack of notice to Clearwater of this attempted landing, the general remoteness of the area and its unsuitability for aviation, the trial court properly concluded as a matter of law that Clearwater did not breach its duty in failing to warn Mr. Bayman and Mr. Carlstrom of the cable's existence.[6] The risk of harm was not reasonably foreseeable. Clearwater was entitled to a summary judgment.

In reviewing the propriety of summary judgment in favor of the Tippetts, we note that Mr. Bayman and Mr. Carlstrom were given permission to enter the Tippett ranch for a business purpose, making Mr. Bayman and Mr. Carlstrom business invitees.[7] Mr. Tippett, as the possessor of the land, had a duty to warn his business invitees of hazards known to him or discoverable by him in the exercise of reasonable care, the danger of which the invitees would not discover or realize.[8]

Mr. Tippett had extended permission to land on the ranch, advised Mr. Bayman of landing sites used on prior occasions, but left the final selection of a landing site to the pilot's discretion. Knowing that Mr. Bayman was flying to the ranch to save time in supervision of his workmen, Mr. Tippett's duty to warn must be limited to that area of the ranch which would foreseeably provide a nearby landing

---

[5] *McQuillan v. Seattle,* 10 Wash. 464, 38 P. 1119 (1895); W. Prosser, *Handbook of the Law of Torts* § 37, at 208 (4th ed. 1971).

[6] *United States v. Washington,* 351 F.2d 913, 916 (9th Cir. 1965); *Columbia Helicopters, Inc. v. United States,* 314 F. Supp. 946, 947 (D. Ore. 1969); *Gunn v. Edison Sault Elec. Co.,* 24 Mich. App. 43, 179 N.W.2d 680, 682 (1970); *Hughes v. Mississippi Power Co.,* 244 Miss. 326, 141 So. 2d 539, 540 (1962).

[7] Restatement (Second) of Torts § 332 (1965).

[8] *Miniken v. Carr,* 71 Wn.2d 325, 327, 428 P.2d 716 (1967); *Jurgens v. American Legion,* 1 Wn. App. 39, 41-42, 459 P.2d 79 (1969); Restatement (Second) of Torts § 343 (1965).

site to achieve this time-saving objective.[9] Several factual questions are present: Was this attempted landing made within the geographical limits of Mr. Tippett's duty to warn; was the cable in such a position and of such a character that Mr. Bayman and Mr. Carlstrom would foreseeably fail to realize its risk to aviation, even in the exercise of reasonable care for their own safety; did Mr. Tippett's warning of updrafts and downdrafts excuse additional warnings of other aviation hazards in the bottom area, such as the cable? These are genuine issues of material fact from which reasonable minds might draw differing inferences as to whether or not the Tippetts were negligent, the critical factual question at issue. Therefore, summary judgment in favor of the Tippetts was improper.[10]

Summary judgment in favor of Clearwater is affirmed; summary judgment in favor of the Tippetts is reversed and remanded to the Superior Court for trial.

GREEN and MUNSON, JJ., concur.

---

[9]*Miniken v. Carr,* 71 Wn.2d 325, 328, 428 P.2d 716 (1967).

[10]*Preston v. Duncan,* 55 Wn.2d 678, 681-82, 349 P.2d 605 (1960); *Sanders v. Day,* 2 Wn. App. 393, 468 P.2d 452 (1970).