706 P.2d 603 (1985)
STATE of Utah, Plaintiff and Respondent,
v.
Kristen Kay McCLAIN, Defendant and Appellant.
No. 19891.
Supreme Court of Utah.
August 27, 1985.
*604 David R. Daines, Christopher L. Daines, Logan, for defendant and appellant.
David L. Wilkinson, Atty. Gen., Dave Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.
HOWE, Justice:
Defendant appeals her conviction of issuing bad checks, a third degree felony, in violation of U.C.A., 1953, § 76-6-505(1) (1978 ed.).
Defendant was a 22-year-old student attending Utah State University at the time she was arrested. She opened a checking account with the Logan branch of Zions First National Bank on September 8, 1982. She wrote the five checks at issue here between November 5 and November 10, 1982, totalling $855, which were dishonored by the bank upon presentation. Testimony at trial disclosed that the bank sent defendant's October and November bank statements as well as notices of overdraft to an incorrect address. Testimony further revealed that between October 25, 1982, and November 12, 1982, less than three weeks, checks totalling $3,164.68 were processed through defendant's account, and deposits totalling $250 were made. From the time defendant opened the account on September 8, 1982, until it was closed on December 20, 1982, she wrote checks totalling $7,716.71 and made deposits of $2,837.33, resulting in a deficit of approximately $4,800. She testified at trial that she did not intend to pass bad checks and that she thought there was enough money in her account to cover each check written. She also testified that she believed her parents were making deposits into her account. With the exception of one check, over which there appeared to be a dispute regarding the cancellation of a contract, she subsequently paid the checks.
Defendant assails her conviction on these points: (1) the trial court abused its discretion in allowing prior bad checks into evidence; (2) the evidence was insufficient to support the conviction; (3) the trial court erred in refusing to instruct the jury as requested; and (4) the prosecutor's closing argument was improper and prejudicial.

I.
Defendant contends that the trial court erred by admitting evidence that she had written nine checks which were returned on an account at First Interstate Bank. She argues that the admission of this evidence could and in fact did mislead, confuse, and prejudice the jury. She claims that checks written on another account could not in any way establish her intent at the time she wrote the checks for which she was arrested and, therefore, the checks were irrelevant. Specifically at issue is whether the trial court abused its discretion under Rule 401 of the Utah Rules of Evidence. This Court will not interfere with the trial court's ruling on evidentiary matters unless it clearly appears that the court so abused its discretion that there is a likelihood that injustice resulted. State v. McCardell, Utah, 652 P.2d 942 (1982); State v. Danker, Utah, 599 P.2d 518 (1979).
Defendant relies on Rules 401 and 402 of the Utah Rules of Evidence, which mandate the exclusion of irrelevant evidence. The State, however, urges that the evidence was properly admitted under Rule 404 because the defendant placed her character in issue by calling character witnesses. Rule 404 allows admission of evidence of a "pertinent trait" by the accused or "by the prosecution to rebut" that same evidence. *605 The admission of the prior checks into evidence was to attack the credibility of both the defendant and her father as witnesses. Additionally, admission of this evidence was proper to show knowledge, intent, or absence of mistake. The evidence showed that this was not in fact defendant's first experience with a checking account. The trial judge weighed the probative value of such evidence in light of its prejudicial effect. The court, outside the presence of the jury and after carefully questioning the prosecution about the admission of this evidence, ruled that the evidence could come in with certain restrictions, e.g., that the prosecution not characterize the checks as "bad checks" or "problem checks." The prosecution was merely allowed to ask the defendant whether or not the checks had been returned. In State v. McCardell, supra, where the defendant was charged with aiding and abetting another to forge an endorsement on a check, we upheld the admission of blank checks found in defendant's automobile. They were identical to a check given to a bank teller and were relevant and probative evidence of material elements of the crime, viz., defendant's knowledge of the fraud and intentional participation in the forgery. There, the blank checks were admitted even though they may have indicated the commission of some other crime or civil wrong.
Although admission of the evidence in question may have created some danger of prejudice, it was not "substantially outweighed by the danger of undue prejudice." Utah R.Evid. 403. Therefore, we hold that the trial court did not abuse its discretion in permitting this evidence to be presented to the jury.

II.
Defendant contends that the evidence was insufficient to support the jury's verdict and that the trial court erred in denying her motion for directed acquittal. This Court will not lightly overturn a jury verdict. We must view the evidence properly presented at trial in the light most favorable to the verdict. When there is any evidence, including reasonable inferences that can be drawn from it, from which findings of all the requisite elements of the crime can be reasonably made, our inquiry stops and we sustain the verdict. State v. Eaton, Utah, 701 P.2d 496 (1985); State v. Gehring, Utah, 694 P.2d 599 (1984). "[I]ntent to commit [a crime] may be found from proof of facts from which it reasonably could be believed that such was the defendant's intent." State v. Kazda, 15 Utah 2d 313, 317, 392 P.2d 486, 488 (1964). Furthermore, it is the responsibility of the jury to evaluate the significance of the evidence. See State v. Wulffenstein, Utah, 657 P.2d 289 (1982).
Defendant argues that the prosecution failed to show that she had the requisite intent, i.e., that she knew the checks would not be honored by the drawee bank. Defendant further argues that if, in fact, the prosecution met its burden, the evidence presented was purely circumstantial and by itself created a reasonable doubt of her guilt. We have previously held that intent to prove a crime "may be inferred from the actions of the defendant or from surrounding circumstances." See State v. Murphy, Utah, 674 P.2d 1220, 1223 (1983). The transcript reveals these actions of the defendant: She wrote a check to House of Sound on November 10 for $450 in exchange for a portable stereo. The co-owner, Mrs. Karen Hechtle, talked with defendant (several days later, after two previous attempts), who indicated she knew that the check had not cleared her account. She made arrangements to pay the check on a certain day. Defendant failed to appear on that day, and Mrs. Hechtle waited a few more days for defendant to deliver payment. She then reported the matter to the police on or about December 7, 1982. Two checks written by defendant to ZCMI, each dated November 4, for $100 and $125, were returned without payment. Despite notices sent by ZCMI to the defendant at the address shown on the checks (her correct address), payment was not made until December 14, 1982. Similarly, a check to *606 Utah State University for $50, dated November 9, 1982, was finally paid December 28, 1982. Concededly, due to a bank error in recording defendant's proper address, it is reasonable to believe that she did not receive any of the notices of overdraft mailed by the bank until after the error was corrected sometime between October 25 and November 12. However, it would have been reasonable for the jury to have concluded that because she did not receive bank statements for two successive months and did not endeavor to obtain duplicates from the bank or verify her balance during that period of time, she had little or no knowledge of her balance. Nor is it unreasonable to conclude that the jury did not believe that the defendant, despite bad management of her checkbook and her habit of keeping a running balance in her head, could really have thought there was money to cover the checks when evidence presented at trial revealed a deficit of nearly $4,800 in the account. The jury was under no obligation to believe defendant's testimony over the testimony of other witnesses and was thus justified in finding that she knew that the checks would not be paid by the drawee. We find competent evidence to sustain the verdict.

III.
Defendant contends that the court erred in refusing to give a requested jury instruction on her reasonable alternative hypothesis. She argues that she presented substantial and credible evidence which created a reasonable doubt of her guilt and justified a reasonable alternative hypothesis instruction to the jury. She claims that evidence of her inadequate record keeping, of her inaccurate mental accounting, and of deposits made to the account, along with the fact that she testified that she did not receive overdraft notices from the bank, were more than sufficient to substantiate a reasonable doubt regarding her intent. This evidence of her lack of awareness regarding her checking account and its surplus or deficit balance, she insists, proves her negligence, not her knowledge that she knew the checks would not be paid by the drawee. This Court has considered similar contentions before. In State v. Clayton, Utah, 646 P.2d 723 (1982), we stated that "the only clear requirement for jury instructions regarding circumstantial evidence ... is for the jury to be instructed regarding the prosecution's burden of proof. This requirement may be met using a `reasonable doubt' instruction or a `reasonable alternative hypothesis' instruction." Id. at 725 (citing State v. Eagle, Utah, 611 P.2d 1211 (1980); State v. King, Utah, 604 P.2d 923 (1979); State v. John, Utah, 586 P.2d 410 (1978); and State v. Schad, 24 Utah 2d 255, 470 P.2d 246 (1970)). The jury was given an instruction on "reasonable doubt." In light of the other jury instructions and the evidence presented, there is no reason to suppose that the jury misunderstood that the defendant had to be aware, i.e., possess actual knowledge, that the checks she wrote would not be honored. Nor is there any reason to suppose that the jury gave undue weight to the evidence by being instructed that reasonable doubt "is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life... . Doubt to be reasonable must be actual and substantial, not mere possibility or speculation." As we stated in State v. Eagle, supra,
[t]he use of the reasonable alternative hypothesis instruction is merely one way of expressing [the] necessary burden of proof and there is no apparent reason to mandate that one, and only one, particular instruction be used by trial judges in conveying to the jury the meaning of that elusive phrase, "proof beyond a reasonable doubt."

IV.
Defendant assails the prosecution's brief summation of the case in closing argument, arguing that by reserving the majority of his time for rebuttal, the prosecutor should have been disqualified on the basis of improper conduct. Defendant relies on Rule 17 of the Utah Rules of Criminal Procedure, which specifically states in *607 subsection (g)(7), "the prosecution shall open the argument, the defense shall follow and the prosecution may close by responding to the defense argument." Here, the prosecutor initially made a very brief statement of the case in his closing argument and reserved most of his time for rebuttal. Although this tactic may not have been what the defendant expected, it was not improper. As to closing arguments, Rule 17 merely requires that the prosecution open closing argument and limit rebuttal to only those matters argued by the defense. We find no error here.
We have reviewed defendant's other claims of error and find them to be without merit.
Affirmed.
HALL, C.J., DURHAM and ZIMMERMAN, JJ., concur.
STEWART, J., concurs in the result.